**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEBRASKA**

In Re:                                                  Case No.: BK16-41849
                                                         Chapter 7

Michael Paul Behne,
     Debtor.

_____/

**ORDER GRANTING MOTION TO DISMISS**

The United States Trustee filed a Motion to Dismiss Pursuant to 11 U.S.C. § 707(b)(2) and (b)(3).  Debtor Michael Paul Behne opposed the motion.  The Court held a hearing, during which it received Debtor's voluntary petition, schedules and statements, pay advices, amended schedules and affidavit as evidence.  Docs. 1, 3, 11, 20.  Neither party offered testimony.  For the following reasons, the motion is GRANTED.

**I.**	**Background**

Debtor petitioned for relief under Chapter 7 of the Bankruptcy Code on December 7, 2016.  In his summary of assets and liabilities, Debtor indicated that his debts were primarily consumer debts.  Doc. 1 at 8.  He reported $78,730.55 in nonpriority unsecured claims on Schedule E/F.  Doc. 1 at 32.

On his Means Test Calculation Forms 122A-1 and 122A-2, Debtor listed monthly income of $7,472.72, which totals $89,672.64 in annual income.  Id. at 49-50.  Subtracting deductions of $5,809.68, Debtor calculated that his monthly disposable income was $1,663.04.  Id. at 58.[1]  Over a period of sixty months, Debtor's monthly

---

[1] The United States Trustee correctly observed that the deductions on the Means Test Calculation form include allowances for expenses Debtor does not actually incur. For example, Debtor deducted the standard expense for housing and rent in the sum of

1

disposable income totals $99,782.40.  Id.  This sum exceeds the $12,850 applicable threshold for a presumption of abuse under section 707(b)(2)(A).[2]  Debtor checked the box under Part 3 of the Means Test Calculation form, acknowledging that the presumption of abuse arose in his case.  Id.  He also admitted this fact at the hearing.

In Part 4 of the Means Test Calculation form, Debtor claimed special circumstances justified additional monthly expenses of $1,540 for "Support of Adult Daughter & 2 Grandsons."  Id. at 59.  Reducing Debtor's monthly disposable income of $1,663.04 by $1,540 results in a monthly disposable income of $123.04.  Applying the "special circumstances" deduction over a period of sixty months results in a total of $7,382.40, which is less than the threshold sum of $12,850 required under 11 U.S.C. § 707(b)(2)(B)(iv).[3]

Similar to the Means Test Calculation Form, Debtor listed $7,500 in monthly gross income and $4,832.09 in monthly net income on Schedule I.  Id. at 36.  On

---

$906 per month and non-mortgage utilities expenses in the sum of $391 per month, even though Debtor actually spends only $500 per month for rent and utilities.

[2] Section 707(b)(2)(A)(i) provides that the court shall presume abuse exists if a debtor's current monthly disposable income multiplied by 60 is not less than the lesser of "(I) 25 percent of the debtor's nonpriority unsecured claims in this case, or $7,700, whichever is greater; or (II) $12,850."  11 U.S.C. § 707(b)(2)(A)(i).  Twenty-five percent of debtor's nonpriority unsecured claims totals $19,682.64, which is more than $7,700.  Comparing the figure in subsection (I) to $12,850 in subsection (II) shows that $12,850 is the lower figure and this number applies in this analysis.  See id.

[3] Section 707(b)(2)(B)(iv) provides: "The presumption of abuse may only be rebutted if the additional expenses or adjustments to income referred to in clause (i) cause the product of the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv) of subparagraph (A) when multiplied by 60 to be less than the lesser of—(I) 25 percent of the debtor's nonpriority unsecured claims, or $7,700, whichever is greater; or (II) $12,850."  11 U.S.C. § 707(b)(2)(B)(iv).

2

Schedule J, Debtor listed expenses totaling $4,772.75, which includes a $1,540 deduction for money he spends to support his daughter and two grandsons. Id. at 38. He listed $59.34 in total net monthly income. Id.

In his affidavit, Debtor explained that he provides $1,540 per month in financial support to his 32-year-old daughter and grandchildren (ages six and nine). His daughter shares joint custody with her sons' fathers. Doc. 20 at ¶ 4. Debtor pays some of his daughter's expenses, including rent, utilities (gas, electric and internet/cable), and automobile insurance, installment payments and licensing. Id. at ¶ 12. Debtor's adult daughter and her two children do not reside with Debtor.[4]

Debtor testified that his daughter "has suffered from Attention Deficit Hyperactive Disorder all her life and alcoholism since the age of 18. She has been 'clean and sober' for approximately four years." Id. at ¶ 5. He explained that his daughter "continues to seek assistance and treatment for her alcoholism and ADHD by attending weekly Alcoholics Anonymous meetings and through regular physical exercise and diet. This is an ongoing struggle for her." Id.

Despite these challenges, Debtor's daughter is gainfully employed.[5] Id. at ¶ 6. Debtor testified that his daughter earns approximately $42,000 per year, the most she

---

[4] On the Means Test Calculation forms, Debtor listed "one" as the number of people in his household and "one" for "the number of people who could be claimed as exemptions on your federal income tax return, plus the number of any additional dependents whom you support." Id. at 50, 52. Debtor claimed three dependents on Schedule J. Id. at 37.

[5] Debtor's daughter receives total net annual income of $55,363.99. Through her employment, she earns approximately $3,499.99 in gross income monthly ($41,999.88 annually). She also receives $157 in monthly child support payments ($1,884 annually)

3

has ever earned. Id. His daughter's employer currently withholds $325 per month from her paycheck to apply toward a salary advance. Id. at ¶ 10. She also receives $157 per month in child support for one of her children. See id. at ¶ 5. Debtor prepared a "draft" Schedule J for his daughter, which he represents comprises her current monthly expenses. See id. at ¶¶ 4-7.

> Debtor testified:
>
> 7. That my daughter's inability to earn a greater income, especially in the recent past, has lead [sic] to periods where she was unable to take care of herself, has consumed alcohol and has had to move in with me at my past residences. The financial stress of not being able to afford her necessary living expenses has endangered her life and wellbeing and caused the loss of employment.

Id. at ¶ 7.

Debtor explained that his assistance with expenses enables his daughter to maintain a "secure and stable home for herself and her family and ensure[s] she has a reliable automobile to get to work and for other/family transportation needs." Id. at ¶ 12.

> Without the $1,540 per month I have been providing she would have no chance of making a budget work. . . . She needs ALL of the monetary assistance I provide; further cuts or getting another job simply are not viable options with two young children.

Id. at ¶ 9. He claims that his daughter does not have the education or employment background to obtain a better job. Id. at ¶ 11.

Debtor maintained that his daughter has relied on his financial support "for more than the last 9 years and will continue to rely on my assistance for the indefinite future." Id. He explained that there is "no one else she can turn to" for financial support. Id.

---

for one of her children. In addition, she receives $1,540 per month ($18,480 annually) from Debtor.

Debtor also stated: "I have kept these accounts in my name for several years because I have feared that if I simply wrote her a check she may have taken those funds and used them for other, destructive purposes." Id. at ¶ 12.  He testified:

> That it has been, and remains to this day, my darkest fear that without my support my daughter will succumb to the economic strain and start drinking again.  By providing this support I have also allowed my daughter and her family to NOT have to rely on welfare assistance.  Regardless of what happens in my Bankruptcy, I will not abandon my daughter.

Id. at ¶ 13.

Debtor explained that he decreased his personal expenses to allow him to support his daughter.  For example, Debtor lives with his brother and pays him $500 per month for rent and utilities.  He also reduced his cell phone, internet and cable expenses.  Debtor claims that he would likely have moved into his own house if he did not have to support his daughter.  Id. at ¶ 14.

## II.    Analysis

Section 707(b)(1) of the Bankruptcy Code provides that a court may dismiss a case filed by an individual Chapter 7 debtor whose debts are primarily consumer debts if it finds that granting relief would be an abuse of the provisions of Chapter 7. 11 U.S.C. § 707(b)(1).  According to section 707(b)(2), "the court shall presume abuse" if the debtor's current monthly disposable income multiplied by 60 is above a certain threshold.  11 U.S.C. § 707(b)(2)(A)(i).  In this case, the threshold is $12,850.  See supra note 2.  Debtor's monthly disposable income of $1,663.04 triggers the presumption of abuse.  Over sixty months, a monthly disposable income of $1,663.04 totals $99,782.40, which is more than the threshold under 11 U.S.C. § 707(b)(2)(A)(i). In his Means Test Forms and at the hearing, Debtor admitted that the presumption of

abuse arises in his case. Additionally, Debtor indicated that his debts are primarily consumer debts on his petition. Doc. 1 at 8.

A. **Debtor's $1,540 monthly payment of his daughter's rent, utilities and vehicle expenses are not allowable expenses under section 707(b)(2)(A)(ii)(II).**

Debtor did not claim his financial support for his daughter and grandchildren as an expense for the support of a chronically ill or disabled family member under section 707(b)(2)(A)(ii)(II) on his Means Test Calculation form. See Doc. 1 at 56, line 26. Despite this omission and despite his admission that the presumption of abuse arises in this case, Debtor asserted at the hearing that his support expenses for his daughter constitutes allowable expenses under section 707(b)(2)(A)(ii)(II). If Debtor prevails on this argument, his monthly disposable income will be reduced from $1,663.04 to $123.04, which does not create a presumption of abuse.

In general, the party asserting that a bankruptcy case should be dismissed under section 707 bears the burden of proof. Robbins v. Ervin (In re Ervin), 2016 WL 721043, at *7 (Bankr. W.D. Va. Feb. 23, 2016); In re Montalto, 537 B.R. 147, 152 (E.D.N.Y. 2015); In re Williams, 424 B.R. 207, 210 (Bankr. W.D. Va. 2010); In re Meade, 420 B.R. 291, 303 (Bankr. W.D. Va. 2009). Consequently, the United States Trustee typically bears the burden of coming forward with evidence showing a presumption of abuse arises under section 707(b)(2) based on a debtor's income and allowed expenses. According to several courts, this general rule is subject to an exception:

> when a presumption of abuse would arise under (b)(2) based on a debtor's income and allowed expenses according to the prescribed Internal Revenue Service "national standards" and "local standards" guidelines, which comprise Lines 19A thru 24 of the (01/08) version of Form 22A, but the debtor asserts that other "necessary expenses" or permitted deductions for debt repayment, which comprise Lines 25 thru 44 of such form, negate

6

> the presumption of abuse, the burden of proof as to those deductions ought to be placed on the debtor. The reasons for this conclusion are that (i) these categories comprise information more readily available to the debtor than to any other party in interest and deal with fact intensive issues which are unique to the debtor, and (ii) such expenses are in the debtor's interest to make as large as possible in order to avoid a presumption of abuse arising. In short, these expenses are very much like the "special circumstances" which a debtor must prove by a preponderance of the evidence to rebut a presumption of abuse which has arisen and therefore might reasonably be said to partake more of the nature of affirmative defenses to a motion to dismiss rather than elements of the presumption itself. Furthermore, to impose the burden of proof upon the party moving for dismissal to establish, for example, that claimed additional telecommunications services in Line 32 are not "necessary for [the debtor's] health and welfare or that of [his/her] dependents" would require such party to try and prove a negative. It makes more sense to require the debtor to prove both that such additional claimed expenses are actually being incurred and that they are reasonably "necessary" for the health and welfare of the household rather than obliging the United States Trustee to try and prove the opposite.

In re Meade, 420 B.R. at 303-04; see also In re Montalto, 537 B.R. at 153-54; In re Ervin, 2016 WL 721043, at *9. Under this approach, the movant carries the prima facie burden of raising the presumption of abuse issue and showing that the debtor's disposable income establishes a presumption of abuse or that the debtor has incorrectly stated his or her income or expenses on the Means Test Calculation form and, if corrected, the debtor would have disposable income sufficient to raise the presumption of abuse. If the movant claims the debtor incorrectly stated his or her income or expenses, the movant must show that the debtor's income and expenses do not meet Internal Revenue Service national and local standards and/or question whether other actual expenses the debtor claims are necessary and reasonable. See In re Montalto, 537 B.R. at 153-54; In re Meade, 420 B.R. at 303. Debtor bears the burden of producing evidence that his or her actual expenses are necessary and reasonable. In re Montalto, 537 B.R. at 153; In re Ervin, 2016 WL 721043, at *9; In re Meade, 420 B.R.

at 303; In re Scurlock, 385 B.R. 814, 816-17 (Bankr. M.D.N.C. 2008). The Court finds that the In re Meade and In re Montalto courts' reasoning is sound and adopts this approach.

Section 707(b)(2)(A)(ii)(II) provides a list of allowable expenses a debtor may deduct from his or her monthly income:

> [T]he debtor's monthly expenses may include, if applicable, the continuation of actual expenses paid by the debtor that are reasonable and necessary for care and support of an elderly, chronically ill, or disabled household member or member of the debtor's immediate family (including parents, grandparents, siblings, children, and grandchildren of the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case who is not a dependent) and who is unable to pay for such reasonable and necessary expenses.

11 U.S.C. § 707(b)(2)(A)(ii)(II). Because Debtor is claiming he incurs actual expenses to care for his daughter and grandchildren, he carries the burden of showing the following elements:

> (1) the expenses must be a continuation of actual expenses paid by the debtor; and
>
> (2) the expenses must be reasonable and necessary for care and support of an elderly, chronically ill, or disabled:
>
> > (a) household member who is unable to pay for such expenses; or
> >
> > (b) member of the debtor's immediate family (as defined by the statute) who is unable to pay for such expenses.

In re Hicks, 370 B.R. 919, 923 (Bankr. E.D. Mo. 2007). Courts afford a narrow interpretation to definitions contained in the means test based on the purpose of the statute.[6] Consistent with this interpretation, courts are reluctant to allow expenses

---

[6] E.g., Ransom v. FIA Card Servs., N.A., 562 U.S. 61, 71 (2011) (affording narrow construction to the term "applicable monthly expenses" under section 707(b)(2)(A)(ii)(I) because "Congress designed the means test to measure debtors' disposable income and,

under section 707(b)(2)(A)(ii)(II) for family members who live independently when there is a lack of evidence showing that they are unable to pay for these expenses. E.g., In re Litt, 2012 WL 392887, at *5 (Bankr. N.D. Ohio Feb. 6, 2012) ("[I]t is clear that the record is not sufficiently developed to allow the court to ascertain whether Debtors' expenses for their daughter qualify as an allowable deduction under § 707(b)(2)(A)(ii)(II). . . . Debtors have not demonstrated that their daughter is disabled and is unable to pay for the expenses. Consequently, the court cannot say that the expenses are reasonable and necessary."); McDow v. Williams (In re Williams), 424 B.R. 207, 215-16 (Bankr. W.D. Va. 2010) (denying the debtors' claim of expenses under this subsection for support of a 40-year-old emancipated daughter where the daughter was employed because the debtors provided no evidence that the daughter was chronically ill or

---

in that way, 'to ensure that [they] repay creditors the maximum they can afford.'") (citation omitted); In re Justice, 404 B.R. 506, 515-16 (Bankr. W.D. Ark. 2009) (affording narrow construction to the term "dependent" under section 707 because "Section 707(b)(2) was enacted as part of BAPCPA, the purpose of which, in part, was to 'curb abuse of the bankruptcy system by implementing a means test to ensure that those who can afford to repay some portion of their unsecured debts are required to do so.' 151 Cong. Rec. S2462, 2470 (2005) (statement of Sen. Nelson). The means test was intended to 'ensure that debtors repay creditors the maximum they can afford.' H.R. Rep. No. 109-31, pt. 1 (2005). When adult children qualify as dependents under § 707(b)(2)(A)(ii)(I), debtors apply standards based on a larger family size, and, therefore, subtract a greater amount of expenses from their current monthly income. Depending on the resulting figure, more dependents may result in an amount of disposable income that does not trigger the presumption of abuse, which may in turn allow chapter 7 debtors to avoid dismissal or conversion of their cases under § 707(b)(2)."); see generally In re Frederickson, 545 F.3d 652, 657 (8th Cir. 2008) (affording narrow interpretation to the "applicable commitment period" under section 1325 in part because "the clear congressional intent of BAPCPA, [was] 'to ensure that debtors repay creditors the maximum they can afford.'") (string citation and internal quotation marks omitted).

disabled beyond their opinion that she was "unable to function at a level sufficient to live separate and apart from the Debtors.").[7]

In this case, the parties do not dispute that Debtor has provided support to his daughter for at least nine years. They also do not dispute that he is currently paying $1,540 per month in rent, utilities and vehicle expenses for his adult daughter and grandchildren, who are members of his immediate family. Therefore, the expenses he pays qualify as a "continuation" of "actual" expenses for a member or members of Debtor's immediate family. See 11 U.S.C. § 707(b)(2)(A)(ii)(II).

Next, Debtor must prove that the family member receiving support fits the statute's description of "elderly, chronically ill, or disabled," that the family member is unable to pay for these expenses, and that the support is reasonable and necessary. Id. In his affidavit, Debtor testified that his daughter suffers from ADHD and alcoholism. Doc. 20 at ¶ 5. Debtor argues that $1,540 in monthly support is necessary for his daughter to maintain a secure and stable home because the financial stress of not being able to afford her necessary living expenses may risk instability in her life and potential relapse. Id. at ¶¶ 7, 9, 12. He claims that "[s]he needs ALL of the monetary

---

[7] Debtor cited only one case in support of his argument that Debtor's payment of his daughter's rent, utilities and vehicle expenses are allowable expenses under 11 U.S.C. § 707(b)(2)(A)(ii)(II): In re Steele, 2010 WL 4791837, at *2-3 (Bankr. D. Wyo. Nov. 18, 2010). The bankruptcy court in In re Steele did not analyze section 707(b)(2)(A)(ii)(II). The issue in In re Steele was confirmation of debtors' amended Chapter 13 plan and, more specifically, whether debtors devoted all disposable income to the plan. The bankruptcy trustee objected to the plan, in part, because debtors provided support to Ms. Steele's 65-year-old parent who was unable to provide for his own $250 monthly rent expense. The court rejected the trustee's argument, citing section 707(b)(2)(A)(ii)(II) for the proposition that this expense was allowable.

assistance I provide; further cuts or getting another job simply are not viable options with two young children." Id. at ¶ 9.

Beyond his opinion and experience, Debtor offered no further documentation of his daughter's ADHD and alcoholism or proof that they are in the nature of "chronic illness" or "disability" necessitating his support in the amount of $1,540 per month. In other words, Debtor provided no medical opinion, diagnosis or medical history documents showing that his daughter's illness or disability renders her unable to pay her rent, utilities and automobile expense. To the contrary, Debtor explained that his daughter lives independently and "is presently gainfully employed and earns approximately $42,000 gross income per year." Doc. 20 at ¶ 6. Other than expressing his concern, he offered no evidence that her ADHD or alcoholism are reasonably certain to deteriorate without his support during the time frame of a hypothetical Chapter 13 plan. Further, he offered no evidence that his daughter's ADHD and alcoholism would prevent her from maintaining employment or living independently if he paid only part of these expenses. Debtor did not meet his burden of showing that the $1,540 he spends to support his daughter and grandchildren fall within the scope of section 707(b)(2)(A)(ii)(II). These expenses may not be deducted from his monthly income in the Means Test Calculation. The presumption of abuse arises in this case.

    **B.**    **Debtor Failed to Rebut the Presumption under Section 707(b)(2).**

A debtor may rebut the presumption of abuse by establishing the presence of "special circumstances" for a particular expense or income adjustment. 11 U.S.C. § 707(b)(2)(B). Section 707(b)(2) provides:

> In any proceeding brought under this subsection, the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a

11

serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.

11 U.S.C. § 707(b)(2)(B)(i). Generally, the debtor bears the burden of rebutting the presumption by establishing special circumstances under both procedural and substantive factors of section 707(b)(2)(B) by a preponderance of the evidence. E.g., James v. West (In re West), 2017 WL 746250, at *3 (Bankr. W.D. Mo. Feb. 24, 2017); In re Martin, 505 B.R. 517, 521 (Bankr. S.D. Iowa 2014). The parties agree that Debtor bears the burden of proving special circumstances in this case.

### 1. Procedural Requirements

Initially, Debtor must satisfy several procedural requirements to establish special circumstances. See 11 U.S.C. § 707(b)(2)(B)(ii)–(iii);[8] see also, e.g., In re Martin, 505 B.R. at 521. Debtor asserts that the $1,540 in expenses he spends to support his daughter and her two children constitute "special circumstances" under section 707(b)(2)(B)(i). In support of this argument, Debtor offered his affidavit. In his affidavit, Debtor testified regarding the expenses he pays for his daughter and grandchildren and

---

[8] Section 707(b)(2)(B) provides:

(ii) In order to establish special circumstances, the debtor shall be required to itemize each additional expense or adjustment of income and to provide—

    (I) documentation for such expense or adjustment to income; and

    (II) a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable.

(iii) The debtor shall attest under oath to the accuracy of any information provided to demonstrate that additional expenses or adjustments to income are required.

the circumstances he alleges justify those expenses. See Doc. 20. He assumed personal responsibility for paying his daughter's rent, utilities (gas, electric and internet/cable), automobile installment payment and automobile insurance, totaling approximately $1,540 per month. Id. at ¶ 12. These bills are in his name and he pays them directly. This testimony is sufficient to satisfy the procedural requirements for establishing special circumstances under section 707(b)(2).[9]

### 2.  Substantive Requirements

Debtor also carries the burden of establishing the substantive requirements necessary to establish special circumstances. Courts agree that the two special circumstances listed in this statute are illustrative and not exhaustive;[10] however, the application of this standard varies considerably. See In re Harmon, 446 B.R. 721, 728–29 (Bankr. E.D. Pa. 2011) (summarizing the various approaches employed by courts

---

[9] See In re Rold, 2010 WL 4065082, at *3 (Bankr. S.D. Iowa Oct. 15, 2010) ("[A] declaration disposes of the procedural requirement in clause (iv)."); In re Edwards, 2010 WL 1006890, at *2 (Bankr. E.D.N.C. Mar. 17, 2010) ("This can be accomplished by the filing of an affidavit."); see also In re Pignotti, 2011 WL 1299616, at *4 (Bankr. S.D. Iowa Apr. 1, 2011) ("Between their declaration and their testimony, Debtors have satisfied the procedural requirements [of section 707(b)(2),]" where the debtors also submitted exhibits to corroborate their testimony); In re Wagner, 2008 WL 706616, at *3 (Bankr. D. Neb. Mar. 14, 2008) ("[The affidavit provided by the debtors] is sufficient to itemize and document the expense as required by § 707(b)(2)(B)."); DeAngelis v. Fonash (In re Fonash), 401 B.R. 143, 148 (Bankr. M.D. Pa. 2008) ("[A] debtor seeking to prove 'special circumstances' to avoid a § 707(b) dismissal must file or introduce into the record verified documentation, independent of his schedules and Form 22A, to prove the bona fide existence and terms of [the expense.]").

[10] E.g., In re Tedford, 2014 WL 3851129, at *4 (Bankr. S.D. Iowa Aug. 5, 2014) (citing In re Haman, 366 B.R. 307, 314 (Bankr. D. Del. 2007)); In re Armstrong, 2007 WL 1544591, at *2 (Bankr. N.D. Ohio May 24, 2007) ("Applying the principle of ejusdem generis, a cannon of statutory interpretation, the court must 'interpret legislatively provided examples as typical of the general category covered.' United States v. Parson, 955 F.2d 858, 869 n. 15 (3d Cir. 1992); see United States v. Miller, 161 F.3d 977, 983 (6th Cir. 1998).").

that have considered whether a debtor rebutted the presumption of abuse); In re Konowicz, 470 B.R. 725, 729 (Bankr. D.N.J. 2012) ("However, courts are divided in their views regarding the scope of the 'special circumstances' provision."). Some bankruptcy courts maintain that rebutting the presumption is a high burden.[11] Other courts opine that a debtor is not required to prove that his or her financial situation is extraordinary, outside the debtor's control or unanticipated to show special circumstances.[12]

On several occasions, this Court has explained that the standard to rebut the presumption under section 707(b) is "extremely high," requiring circumstances that are "truly special." In re Samson, 2008 WL 2949259, at *2 (Bankr. D. Neb. July 28, 2008) (citation omitted); In re Wagner, 2008 WL 706616, at *2 (Bankr. D. Neb. Mar. 14, 2008) (citation omitted); In re Herbert, 2007 WL 6363172, at *2 (Bankr. D. Neb. May 21, 2007) (citation omitted). Under this analysis, the ability to rebut the presumption of abuse is

---

[11] See In re Mittelstaedt, 2014 WL 814038, at *3 (Bankr. D.S.D. Feb. 28, 2014) ("That burden is substantial: 'Although this presumption may be rebutted, § 707(b) goes on to set this bar extremely high, placing it effectively off limits for most debtors.'") (quoting In re Haar, 360 B.R. 759, 760 (Bankr. N.D. Ohio 2007)); In re Wagner, 2008 WL 706616, at *2 (noting that "rebutting the presumption of abuse requires circumstances that are truly special"); In re Martin, 371 B.R. 347, 352 (Bankr. C.D. Ill. 2007) (concluding that special circumstances in the context of section 707(b)(2)(B) means "uncommon, unusual, exceptional, distinct, peculiar, particular, additional or extra factors, conditions, or facts which must be considered in determining whether the Debtors' filing actually constitutes abuse."); see also In re Rieck, 427 B.R. 141, 146 (Bankr. D. Minn. 2010) (citations omitted); In re Tedford, 2014 WL 3851129, at *4 (citation omitted).

[12] See In re Harmon, 446 B.R. 721, 728 (Bankr. E.D. Pa. 2011) (quoting In re Hammock, 436 B.R. 343, 354–55 (Bankr. E.D.N.C. 2010)); In re Fonash, 401 B.R. at 146 (noting the "burden to establish special circumstances was not set particularly high, making the presumption truly rebuttable. The standard . . . is special, not extraordinary."); see also In re Crego, 387 B.R. 225, 228 (Bankr. E.D. Wis. 2008) (pointing out that "special circumstances" is not worded as harshly as other exceptions or limitations under the Bankruptcy Code, including section 523(a)(8) related to undue hardship).

"effectively off limits for most debtors." In re Samson, 2008 WL 2949259, at *2 (citations omitted).

Debtor argues that paying his daughter's rent, utilities and vehicle expenses enables his daughter to maintain a "secure and stable home for herself and her family and ensure[s] she has a reliable automobile to get to work and for other/family transportation needs." Doc. 20 at ¶ 12. He claims that these expenses are necessary because his daughter suffers from ADHD and alcoholism, and recent periods of financial stress caused her to consume alcohol, rendering her "unable to take care of herself," "endanger[ing] her life and wellbeing" and "caus[ing] the loss of employment." Id. at ¶¶ 5, 7. Debtor maintains that:

> Without the $1,540 per month I have been providing she would have no chance of making a budget work. . . . She needs ALL of the monetary assistance I provide; further cuts or getting another job simply are not viable options with two young children.

Id. at ¶ 9.[13] Debtor explained that there is "no one else she can turn to" for financial support. Id. at ¶ 11. He worries that "without my support my daughter will succumb to

---

[13] The United States Trustee responded to this argument by claiming that a slight reduction in his support would create a presumption of abuse and allow Debtor to fund a Chapter 13 plan. The Trustee noted that a payment of $214.17 per month is sufficient to show a presumption of abuse under section 707(b). A minimal payment of $214.17 per month for 60 months totals $12,850.20, which is the threshold in this case. See supra, note 2. By reducing his support for his daughter by $91.13 per month on the Means Test Calculation form, he would have sufficient monthly disposable income to create a presumption of abuse. ($123.04 + $91.13 = $214.17). Similarly, if he reduced his expenses on Schedule J by $154.83, his disposable income would equal $214.17. ($59.24 + $154.83 = $217.17).

If Debtor discontinued all payments to his daughter, he could devote $1,599.34 per month to a Chapter 13 plan. Over the course of a 60-month Chapter 13 plan, these payments equal $95,960.40, allowing him to pay unsecured creditors in full.

The Trustee's argument, while compelling in the context of a totality of circumstances analysis under 11 U.S.C. § 707(b)(3)(B), is arguably not relevant to the

15

the economic strain and start drinking again.  By providing this support I have also allowed my daughter and her family to NOT have to rely on welfare assistance."  Id. at ¶ 13.

At the hearing, neither party provided any direct or analogous authority in which the support of an adult child with ADHD and alcoholism was a "special circumstance," where the child lived outside the household and earned income independent from parental contributions.  Likewise, the parties provided no authority stating that ADHD and alcoholism constitute a "serious medical condition" as contemplated by section 707(b).  At the hearing, Debtor characterized this issue as one of "first impression."

Both parties agree that numerous courts from across the country have held that the support of a child in college who lives outside the household is not a "special circumstance" under section 707(b)(2)(B).  See, e.g., In re Linville, 446 B.R. 522, 528-29 (Bankr. D.N.M. 2011); In re Walker, 383 B.R. 830, 838 (Bankr. N.D. Ga. 2008) ("The Court is not implying that supporting college-age children is not admirable when parents have the means to do so.  However, the Court agrees with its learned colleagues that supporting adult children at the expense of unsecured creditors is not permissible.") (citations omitted).  Conversely, courts typically find "special circumstances" that justify additional expenses where disorders, illnesses or disabilities render the person needing support unable to work or that require a debtor to pay expenses for medical treatment. See, e.g., In re Chabre, 531 B.R. 875, 879 (Bankr. M.D. Fla. 2015) (allowing the

---

analysis under 11 U.S.C. § 707(b)(2)(A)(ii)(II).  See In re Haman, 366 B.R. at 315 (noting that analysis of Debtor's ability to fund a Chapter 13 plan is not appropriate when considering special circumstances under section 707(b)(2)(B)).

debtor's additional expenses as special circumstances where the debtor supported relatives with "chronically poor health" and "disabilities that prevent their employment"); In re Davis, 2011 WL 5884015, at *7 (Bankr. N.D. Tex. Nov. 23, 2011) (allowing the debtors' $300 savings expense as a special circumstance for the wife's treatment for malignant melanoma); In re Edwards, 2010 WL 1006890, at *1-2 (Bankr. E.D.N.C. Mar. 17, 2010) (allowing a debtor's additional expenses as special circumstances where she suffered a severe stroke rendering her "totally disabled" and "unable to live without constant medical care"); In re Haman, 366 B.R. 307, 315 (Bankr. D. Del. 2007) (allowing the debtor to pay as co-signor on her son's nondischargeable student loan debt as a special circumstance where the son's "several psychological disorders" rendered him unable to make the payments independently).

Without a link between the medical condition and the additional expenses claimed, courts decline to find special circumstances under section 707(b)(2)(B). See In re Oliver, 350 B.R. 294, 303 (Bankr. W.D. Tex. 2006) (not allowing the debtor's medical expenses for his diagnosed depression, anxiety and bipolar disorder as special circumstances in part because the debtor "maintained steady employment over the last 15 years that he has suffered these conditions"); In re Nguyen, 2016 WL 3598322, at *7 (Bankr. D. Kan. June 27, 2016) (not allowing debtor's medical expenses because he failed to prove his condition either generated substantial expenses that were not accounted for under the means test, or which significantly impaired his ability to earn a high income).

In cases like this where debtors claim special circumstances justify additional expenses for medical conditions, courts require debtors to substantiate with concrete

evidence, rather than opinion or conjecture, that the special circumstances are bona fide and connected to the expense claimed. See, e.g, In re Delunas, 2007 WL 737763, at *2 (Bankr. E.D. Mo. 2007) (holding that the debtors failed to show that remaining in their current residence was necessary where the debtors feared that moving would worsen their daughter's depression and stating that the debtors' concerns were insufficient without "qualified medical evidence offered in support of [their] belief"); In re Goodall, 2007 WL 4868303, at *3 (Bankr. D.N.D. Sep. 14, 2007) (holding that the debtor's failure to provide complete documentation for her alleged medical expenses, sufficient to prove her future expenses were not merely speculative, was grounds to find against the debtor on an allegation that her postpetition medical expenses constituted special circumstances under section 707(b)(2)); In re Oliver, 350 B.R. at 303 (holding that the debtor failed to show medical expenses for his diagnosed depression, anxiety and bipolar disorder were necessary without "provid[ing] any corroborating evidence of how these conditions were affecting his income or expenses") (emphasis added); In re Thompson, 457 B.R. 872, 882 (Bankr. M.D. Fla. 2011) (concluding "[s]peculative expenses" related to debtors' children's medical conditions "are not properly considered special circumstances"); see also In re Stanley, 438 B.R. 860, 865 (Bankr. D.S.C. 2010) (holding that the debtors failed to show special circumstances because, although they proved the wife had severe depression, they could not prove the debt maintenance they sought to pay was "reasonable and necessary" where they incurred it as a result of the wife's excessive purchasing to cope with her depression).

      Although the Court commends Debtor's commitment to his daughter, the Court is not convinced that the record demonstrates that the daughter's ADHD and alcoholism

constitute "special circumstances" sufficient to rebut the presumption of abuse. Debtor failed to offer evidence that his daughter's ADHD and alcoholism render her unable to pay her living expenses. Debtor offered no medical diagnosis for his daughter's ADHD or alcoholism and no medical records or expert testimony from which the Court could make a reliable determination as to the seriousness of the daughter's conditions. The Court may conclude, however, that ADHD and alcoholism do not render Debtor's daughter unable to work. She is earning a gross income of $42,000 and has maintained sobriety for approximately four years. Beyond his personal opinion, Debtor offered no evidence showing that her illness or disability is reasonably likely to deteriorate if he contributes less or no support. Therefore, Debtor failed to carry his burden of showing "special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative" under section 707(b)(2)(B).

Because Debtor did not offer evidence sufficient to rebut the presumption of abuse, it is not necessary for this Court to reach the United States Trustee's argument that the totality of circumstances shows an abuse of the provisions of Chapter 7. Egebjerg v. Anderson (In re Egebjerg), 574 F.3d 1045, 1048 (9th Cir. 2009) (noting that the statute is framed to consider the presumptive abuse question first and resorting to the totality of the circumstances analysis is only necessary if the debtor survives the means test); see also  In re Rieck, 427 B.R. 141, 149 (Bankr. D. Minn. 2010); In re Swanson, 2008 WL 4540181, at *3 (Bankr. D. Neb. Oct. 7, 2008).

### III.     Conclusion

For the reasons discussed above, the United States Trustee's Motion to Dismiss is GRANTED. Debtor is granted 14 days to convert this case to a case under Chapter 13. If Debtor fails to file a motion to convert within this time, the Court will dismiss this case.

Dated August 25, 2017.

*Shon Hastings*

Shon Hastings, Judge
United States Bankruptcy Court